# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------X
SPECIALTYCARE INC., REMOTE :
NEUROMONITORING PHYSICIANS, : INDEX NO.:
PC, and SENTIENT PHYSICIANS, PC, :
            :
    Plaintiffs,    :  **COMPLAINT**
            :
  -against-     :
            :
OSCAR HEALTH, INC.,    :
    Defendant.   :
-------------------------------------------------X

    Plaintiffs, SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, AND SENTIENT PHYSICIANS, PC (collectively, "**SpecialtyCare**") bring this action against Defendant, OSCAR HEALTH, INC. ("**Oscar Health**"), and allege as follows:

## NATURE OF THE ACTION

    1.  Defendant, Oscar Health, is violating the Federal No Surprises Act ("**NSA**") and engaging in bad faith claims settlement practices. Oscar Health has devised a scheme to turn the purpose of the NSA on its head. Rather than Independent Dispute Resolution ("**IDR**") proceedings being a quick, efficient way to resolve payment disputes between out-of-network ("**OON**") providers of emergency services and health plans, Oscar Health has used the NSA to deny, delay,

and underpay OON providers. After providers receive low initial payments from Oscar Health (or no payment at all), providers must navigate the NSA to receive a determination for fair compensation of their services. Once a provider receives an IDR award determination, Oscar Health delays payment far beyond the statutorily mandated 30-day deadline.

2. To date, and after write offs, Oscar Health has not paid $257,435 in IDR awards issued through November 11, 2024, to SpecialtyCare. Oscar Health is ignoring federal law and violating New York state law and must be held accountable.

## THE PARTIES

3. SpecialtyCare, Inc. is a corporation organized under the laws of the State of Delaware and has its principal place of business in Brentwood, Tennessee. SpecialtyCare, through its affiliates and subsidiaries, is a leading national health care provider of intraoperative neuromonitoring throughout the United States, including New York. SpecialtyCare has two affiliated entities: Plaintiffs Remote Neuromonitoring Physicians, PC and Sentient Physicians, PC. Remote Neuromonitoring Physicians, PC is organized under the laws of the state of Pennsylvania and Sentient Physicians, PC, is organized under the laws of the state of Illinois. Both are professional corporations with principal places of business located in Brentwood, Tennessee.

2

4.      Upon information and belief, Oscar Health is a for-profit corporation organized under the laws of the state of Delaware with its principal place of business located at 75 Varick Street, Fifth Floor, New York, New York 10013.  Oscar Health insures and administers health insurance products and benefits plans throughout New York.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper pursuant to CPLR §§ 301 and 302 because, among other reasons, Oscar Health: operates, conducts, engages in, and carries on a business in New York and in this County; maintains offices and facilities in New York and in this County; and committed the acts complained of herein in New York and in this County.

6.      Venue is proper pursuant to CPLR § 503(c) because Oscar Health's principal office is located in New York County.

## FACTUAL ALLEGATIONS

7.      This dispute arises from Oscar Health's failure to reimburse SpecialtyCare for its health care services provided to Oscar Health's members.

8.      At all material times, Oscar Health was obligated to cover and reimburse SpecialtyCare for certain OON items and services rendered to Oscar Health's members and insureds under the NSA.

3

Case 1:25-cv-00983    Document 1-1    Filed 02/03/25    Page 5 of 17

9.    The NSA became effective January 1, 2022, and requires health plans and insurers, like Oscar Health, to provide coverage and reimburse providers directly for OON emergency health care services and non-emergency services furnished by OON providers at participating hospitals and facilities.

10.    Under the NSA, health plans and issuers have 30 calendar days from the date the bill is transmitted by the provider to pay or deny the claim. 42 U.S.C. §§300gg-111(b)(1)(C-D). Plans and issuers are allowed to initially pay the OON provider whatever amount they choose (or nothing at all). If the payment is too low, the provider may initiate an "open negotiation period" to negotiate a higher amount. *Id.* § 300gg-111(c)(1)(A). If negotiations fail, the provider may initiate an IDR process where a third-party arbitrator, known as an IDR entity, determines the pricing on the claim(s). *Id.* § 300gg-111(c)(1)(B).

11.    The IDR process requires both parties to submit position statements and proposed offers of payment for the items and services at issue to the IDR entity. *Id.* § 300gg-111(c)(5)(B)(i). The IDR entity then evaluates both proposed offers based on a number of statutory factors, then selects one offer as the appropriate payment for the items and services at issue. *Id.* § 300gg-111(c)(5)(C).

4

12.     After the IDR entity's determination, the health plan or insurer is required to pay any amount owed **within thirty (30) calendar days**. *Id.* § 300gg-111(c)(6).

13.     Since the implementation of the NSA, SpecialtyCare and Oscar Health have engaged in numerous IDR processes and proceedings to resolve OON payment disputes. In most, if not all of those IDR proceedings, Oscar Health participated and responded in writing to SpecialtyCare's claims and demands. Likewise, numerous IDR entities have issued determinations clearly requiring Oscar Health to pay SpecialtyCare additional amounts pursuant to the NSA.

14.     The IDR awards at issue were rendered in accordance with the NSA, and are, therefore, binding upon SpecialtyCare and Oscar Health. *Id.* § 300gg-111(c)(5).

15.     However, Oscar Health has consistently failed to remit payment pursuant to the IDR entity's determinations, resulting in $257,590 in unpaid and past due IDR awards of which $155 was written off such that $257,435 is owed to SpecialtyCare from Oscar Health ("**Debt**"). A chart identifying each of the unpaid IDR awards at issue in this action, including the dispute numbers for IDR award against Oscar Health and the amount Oscar Health owes under each award, is attached hereto as **Exhibit A.**

5

Case 1:25-cv-00983    Document 1-1    Filed 02/03/25    Page 7 of 17

16.     Additionally, Oscar Health has consistently failed to make timely payment within the NSA's required 30-calendar-day payment window, beginning when the IDR entity issued an award in favor of SpecialtyCare. Indeed, many payments are more than 120 days past due.

17.     SpecialtyCare has made numerous demands to Oscar Health for its payment on the Debt.

18.     Beginning in 2023 and continuing throughout 2024, SpecialtyCare escalated the issue of Oscar Health's routine failure to pay amounts owed for the IDR entity determinations to Oscar Health. Although not required by the NSA, SpecialtyCare provided an inventory of IDR entity determinations to Oscar Health to aid in the resolution of the Debt. Such inventory listed the following identifying information:

- IDR dispute number
- Current Procedural Terminology
- Service Date
- Processor Control Number
- Payor Claim Number
- Award Total
- Decision Date
- Expected Payment Date
- Total Payments (to date)
- Still Owed
- Patient Amount Paid

6

19. SpecialtyCare diligently followed-up with Oscar Health through multiple emails, Oscar Health's online provider portal, and Oscar Health's customer service hotlines, among other avenues. However, Oscar Health frequently ignored SpecialtyCare's reminders for weeks at a time and has continued to not pay the Debt.

20. SpecialtyCare engaged and continues to engage in a series of transactions in an open account with Oscar Health.

21. SpecialtyCare provided and continues to provide OON items and services to Oscar Health's members and insureds and, when necessary to protect its rights, sought reimbursement pursuant to the NSA. Accordingly, SpecialtyCare also expects to enter further transactions with Oscar Health that may yield future IDR entity determinations and increase the Debt.

22. For each IDR determination at issue, Oscar Health made no payment at all or an initial payment on the claim that was unreasonable and well below the amount ultimately awarded in the IDR.

23. Oscar Health makes low initial payments hoping that SpecialtyCare will be too busy to file IDR proceedings or will miss one of the NSA's strict deadlines. This forces SpecialtyCare to go through the IDR process, which is burdensome, on every claim.

7

Case 1:25-cv-00983   Document 1-1   Filed 02/03/25   Page 9 of 17

24.     When SpecialtyCare challenges Oscar Health's low payments and receives IDR awards for higher amounts, Oscar Health then unreasonably delays payment past the statutory payment deadline of thirty days.

25.     Oscar Health knows that it is statutorily required to pay IDR awards within thirty days. However, it does not invest in the compliance systems and personnel needed to meet their obligations under federal law because they know that they, their shareholders, and the health plans they serve profit from lack of compliance and violation of the mandatory payment obligations. Oscar Health knows that the longer it delays or denies payment, the more they earn from the interest and/or investment income generated for their fully insured business. By delaying payment or not paying IDR awards, Oscar Health is able to keep the health plans' claims costs arbitrarily low, thus incentivizing plans to stay with them or using the results to market their services to other health plans.

26.     Despite SpecialtyCare's numerous demands, Oscar Health has failed to satisfy the Debt. As a result, Oscar Health has forced SpecialtyCare to file this action to obtain the payments owed for services provided by SpecialtyCare. *See* Exhibit A.

## COUNT I – ACTION FOR CONFIRMATION OF IDR AWARDS (9 U.S.C. § 9)

27.     SpecialtyCare incorporates and realleges paragraphs 1 – 26 as though fully alleged and set forth herein.

Case 1:25-cv-00983     Document 1-1     Filed 02/03/25     Page 10 of 17

28.     The NSA states that a determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "***shall be made*** directly to the nonparticipating provider ***not later than 30 days after*** the date on which such determination is made." *See* 42 U.S.C. §§ 300gg-111(c)(5)(E), 111(c)(6) (emphasis added). More than thirty days have passed for all IDR determinations at issue herein. Oscar Health did not challenge or seek to vacate the awards. Oscar Health simply did not pay them.

29.     Pursuant to Section 9 of the Federal Arbitration Act ("**FAA**"), a party to an arbitration may commence a summary action in court for confirmation of the award, and a "court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9.

30.     In keeping with the strong federal policy favoring arbitration, confirmation proceedings under the FAA are generally summary in nature. *See Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989) ("A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary[.]").

31.     As previously noted, IDR awards issued under the NSA are final and binding upon the parties and, hence, subject to enforcement by the Court under Section 9 of the FAA.

9

32.     SpecialtyCare is entitled to an order confirming the IDR awards issued through November 11, 2024.[1]

33.     Accordingly, SpecialtyCare brings this action for an Order confirming each of the unpaid IDR awards set forth in Exhibit A.

34.     The amounts owed on unpaid IDR awards issued through November 11, 2024, after write offs, total $257,435, plus pre-judgment and post-judgment interest.

## COUNT II - OSCAR HEALTH'S VIOLATION OF NO SURPRISES ACT

35.     SpecialtyCare incorporates and realleges the paragraphs 1 – 26 as though fully alleged and set forth herein.

36.     The NSA states that a determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "**shall be made** directly to the nonparticipating provider **not later than 30 days after** the date on which such determination is made." *See* 42 U.S.C. §§ 300gg-111(c)(5)(E), 111(c)(6) (emphasis added). More than thirty days have passed for all IDR determinations at issue herein.

---

[1] The IDR awards through November 11, 2024, and the amounts due and owing pursuant to said awards are not in dispute. Oscar Health has copies of all IDR awards for which SpecialtyCare seeks confirmation. Furthermore, Exhibit A contains coding information and dates of decisions for Oscar Health to confirm the amounts of the awards listed therein. As such, SpecialtyCare has not attached each IDR award for which it seeks confirmation to this Complaint.

Case 1:25-cv-00983    Document 1-1    Filed 02/03/25    Page 12 of 17

Oscar Health did not challenge or seek to vacate the IDR awards. Oscar Health simply did not pay them.

37. Oscar Health has routinely failed to pay IDR awards issued through November 11, 2024, to SpecialtyCare within the statutorily mandated 30-day deadline.

38. As a result of Oscar Health's violation of and disregard of the NSA's requirements, SpecialtyCare has been directly and proximately damaged by Oscar Health's failure to remit payment in full in an amount in excess of $50,000, plus prejudgment and post-judgment interest.

## COUNT III - ACCOUNT STATED

39. SpecialtyCare incorporates and realleges paragraphs 1 – 26 as though fully alleged and set forth herein.

40. There is presently due and owing to SpecialtyCare from Oscar Health the sum of $257,435 on an account stated between the parties, which amount represents the total principal amount owed by Oscar Health on unpaid IDR awards issued through November 11, 2024.

41. SpecialtyCare has made frequent demands to Oscar Health for the above-described amounts due and owing and provided a statement of Oscar Health's balance owed on the Debt to Oscar Health, a copy of which is attached as Exhibit A.

11

42.     Oscar Health did not object to the validity of the IDR entity determinations underlying the Debt.

43.     SpecialtyCare has been directly and proximately damaged by Oscar Health's failure to remit payment in full on the account stated between the parties and is entitled to recover money damages plus prejudgment and post-judgment interest, in an amount to be determined at trial, but in no event less than $257,435.

## COUNT IV – N.Y. PROMPT PAYMENT LAW

44.     SpecialtyCare incorporates and realleges paragraphs 1 – 26 as though fully alleged and set forth herein.

45.     New York Insurance Law § 3224-a (the "**Prompt Pay Law**") provides that in the processing of all health care claims and bills from health care providers, any insurer or organization or corporation licensed or certified pursuant to Insurance Law article 43 or Public Health Law article 44 shall pay the bill or claim of a medical provider within 30-45 days of receipt.

46.     The IDR awards at issue were rendered in accordance with the NSA, and are, therefore, binding upon SpecialtyCare and Oscar Health. 42 U.S.C. § 300gg-111(c)(5).

47.     Oscar Health did not object to the validity of or seek to vacate the IDR entity determinations underlying the Debt.

12

48.     Oscar Health has unjustifiably failed and refused to compensate SpecialtyCare in compliance with the requirements of the Prompt Pay Law for the provision of health care services to Oscar Health's members.

49.     Oscar Health's failure to pay constitutes a violation of the Prompt Pay Law.

50.     By reason of the foregoing, SpecialtyCare has been damaged in an amount to be determined at trial, but no less than $257,435.

## COUNT V – BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARY

51.     SpecialtyCare incorporates and realleges paragraphs 1 – 26 as though fully alleged and set forth herein.

52.     Upon information and belief, each of Oscar Health's members has entered into contracts with Oscar Health under which Oscar Health is to pay claims for covered health care services that health care providers rendered to these members.

53.     SpecialtyCare, as an OON provider who serves Oscar Health members, is an intended beneficiary of these contracts.

54.     Oscar Health has breached these contracts by failing to promptly and properly pay SpecialtyCare for covered health care services.

13

Case 1:25-cv-00983    Document 1-1    Filed 02/03/25    Page 15 of 17

55.     By reason of the foregoing, SpecialtyCare has been damaged in an amount to be determined at trial, but no less than $257,435.

56.     By reason of the foregoing, SpecialtyCare is entitled to punitive damages in an amount to be determined at trial.

## COUNT VI – BREACH OF IMPLIED CONTRACT VIS-À-VIS OSCAR HEALTH

57.     SpecialtyCare incorporates and realleges paragraphs 1 – 26 as though fully alleged and set forth herein.

58.     Through the course of SpecialtyCare providing services to Oscar Health's members and Oscar Health's partial payment for those services an implied contract arose. Through their conduct, SpecialtyCare and Oscar Health manifested their assent to a contract that obligated SpecialtyCare to provide health care services to Oscar Health members. At the same time, Oscar Health's conduct recognized that it was obligated to pay for those services at the rates and amounts determined by an IDR process. SpecialtyCare agreed to accept those payments as payment in full for its services.

59.     SpecialtyCare fulfilled its obligations under the implied contract by providing health care services that Oscar Health is obligated to ensure its members have access to.

14

Case 1:25-cv-00983     Document 1-1     Filed 02/03/25     Page 16 of 17

60.     Beginning in 2022 and continuing to the date of this Complaint, Oscar Health materially breached its obligations under this implied contract by failing and refusing to pay the claims submitted by SpecialtyCare for IDR determination for services rendered to Oscar Health members.

61.     Oscar Health's breach of its contractual obligation has damaged SpecialtyCare in an amount to be determined at trial, but which is presently $257,435.

62.     SpecialtyCare has demanded that Oscar Health comply with its contractual obligations and pay the amounts it owes, but Oscar Health has refused and continues to refuse to comply with its obligation to pay SpecialtyCare for the services provided to Oscar Health members.

## PRAYER FOR RELIEF

WHEREFORE, SpecialtyCare respectfully prays for the following relief:

A.     An Order confirming each IDR award included in Exhibit A pursuant to 9 U.S.C. § 9;

B.     An Order enforcing all the IDR awards through November 11, 2024, not paid within thirty days as required by federal law in an amount not less than $257,435 and a judgment for the total amount outstanding plus pre- and post-

15

judgment interest under 28 U.S.C. § 1961, N.Y. Ins. Law § 3224-A(c)(1) and other applicable New York state law;

C.      Equitable relief requiring Oscar Health comply with the NSA by paying all future IDR awards within thirty ("30") days; and

D.      Any and all additional legal or equitable relief to which SpecialtyCare may be entitled.

## **JURY TRIAL DEMAND**

SpecialtyCare demands a trial by jury for all issues so triable as a matter of right.

Dated: December 30, 2024.

OF COUNSEL:

Robert W. Thielhelm Jr.
James V. Etscorn
Andrew T. Hughes
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
(407) 649-4000
RThielhelm@bakerlaw.com
jetscorn@bakerlaw.com
ahughes@bakerlaw.com

Respectfully submitted,

*/s/ Maximillian S. Shifrin*
Maximillian S. Shifrin
Luke E. Record
BAKER & HOSTETLER LLP
45 Rockefeller Plaza, 15th Floor
New York, NY 10111
(212) 589-4252
mshifrin@bakerlaw.com
lrecord@bakerlaw.com

*Attorneys for Plaintiffs*

16